UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| BERRY PLASTICS CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:12-cv-73-RLY-WGH |
| | ) | |
| PROTECTO WRAP COMPANY, | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS OR,
ALTERNATIVELY, TO TRANSFER**

Defendant, Protecto Wrap Company ("Protecto"), moves to dismiss the Complaint for lack of personal jurisdiction. Alternatively, if the court finds it does have personal jurisdiction over Protecto, Protecto moves for transfer pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the court **DENIES** Protecto's motion to dismiss and **DENIES** Protecto's alternative motion for transfer.

**I.    Background**

Plaintiff, Berry Plastics Corporation ("Berry"), is a Delaware corporation with its principal place of business in Evansville, Indiana. (Compl. ¶ 1). Protecto is a Colorado limited liability company with its principal place of business in Denver, Colorado. (Affidavit of Jack Hopkins ("Hopkins Aff.") ¶ 6, June 18, 2012).

Between the months of September and December 2010, Protecto purchased goods from Berry subject to a written Application for Open Account ("Credit Application"). (Compl. ¶ 3). The Credit Application, executed by Protecto on May 27, 2009, included the following clause:

1

> Standard Terms.  We have received and reviewed your standard terms and conditions for sale of goods by paper or electronic copy or on your website at www.berryplastics.com.  We agree that all sales of goods to us will be subject to these standard terms and conditions for sale of goods as they now exist and as they may be amended hereafter and reflected on your invoices or on your website.  Inconsistent provisions in our purchases orders will be of no effect.

(Affidavit of Ronda Hale ("Hale Aff.") ¶¶ 5-7, Ex. 1).  In addition, Berry issued five (5) invoices or credit memos related to the goods purchased by Protecto.  (*Id*. at ¶ 12, Ex. 4).  The invoices are dated September 16, 2010 and December 9, 2010; one (1) credit memo is dated November 30, 2010 and two (2) credit memos are dated December 22, 2010.  (*Id*. at Ex. 4).  Each of these contained the following language:

> **NOTICE**: Berry Plastics Corporation reserves the right to assess a finance charge up to the maximum rate permitted by law plus costs of collection including attorney fees against all delinquent invoices.  All sales are subject to the Berry Plastics Standard Terms and Conditions at: www.berryplastics.com/terms.

(*Id*.) (emphasis in original).

Berry's Standard Terms and Conditions ("Standard Terms and Conditions"), as referenced in the Credit Application, invoices, and credit memos, included the following forum selection clause:

> 13. Laws.  A.  **The Agreement shall be interpreted under Indiana law without regard to choice of law principles** and shall not be governed in whole or in part by the United Nations Convention on Contracts for the International Sale of Goods; as allowed by that convention, the parties specifically disclaim its application.  **Purchaser consents to jurisdiction of state and federal courts in Indiana and venue of Vanderburgh County to resolve any dispute between the parties**; provided, however, that Berry may institute an action for equitable relief in a different jurisdiction at the site of an alleged wrong.

(*Id*. at Ex. 2) (emphasis added).

2

Protecto has failed and refused to pay the amount due to Berry for these invoices in the net amount of $88,756.45. (Compl. ¶ 4). Consequently, on April 25, 2012, Berry filed a Complaint in Vanderburgh Superior Court against Protecto for account stated, breach of contract, and unjust enrichment related to goods purchased by Protecto from Berry. On May 23, 2012, Protecto removed the case to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Protecto now seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction because Protecto, a Colorado company, neither conducts business nor maintains any offices in the State of Indiana. (Hopkins Aff. ¶¶ 7-9, 17). Alternatively, Protecto requests the court to transfer the case to the United States District Court for the District of Colorado ("District of Colorado") pursuant to 28 U.SC. §1404(a).

## II. Discussion

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Protecto's brief in support of dismissal focuses on its alleged lack of minimum contacts with the State of Indiana.[1] Berry opposes the motion, stating that Protecto consented to jurisdiction in an Indiana court by virtue of the forum selection clause found

---

[1] Protecto also extensively relies on Berry attaching the incorrect Terms and Conditions to the Complaint. Berry acknowledged this mistake and has attached the applicable Terms and Conditions to its response. A plaintiff need not include facts alleging personal jurisdiction in its complaint, so this mistake is not fatal to its claims. *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). Moreover, in determining whether personal jurisdiction exists, the court is not limited to Berry's pleadings, but may consider affidavits, interrogatories, depositions, oral testimony, and other recognized methods of discovery. *Patton v. Fiducial Fin. Services, Inc.*, No. 1:05-cv-1481, 2006 WL 2540337, at *1 (S.D. Ind. Aug. 31, 2006); *Andersen v. Sportmart, Inc.*, 57 F.Supp.2d 651, 654-55 (N.D.Ind.1999). Thus, the court will consider the materials attached to Berry's response.

3

in its Standard Terms and Conditions. If the forum selection clause is valid and enforceable, then challenges to personal jurisdiction are waived. *Zimmer, Inc. v. Sharpe*, No. 3:09-cv-117, 2009 WL 1424199, at *2 (N.D. Ind. May 15, 2009) (citing *Pollas v. Hardware Wholesalers, Inc.*, 663 N.E.2d 1188, 1191 (Ind. Ct. App. 1996)); *see also TruServ Corp. v. Flegeles, Inc.,* 419 F.3d 584, 589 (7th Cir. 2005) (citation omitted). Thus, the court will first evaluate the validity of the forum selection clause and only turn to a minimum contacts inquiry if the clause is deemed unenforceable.

### 1. Applicable Law

The forum selection clause provides that the "Agreement shall be interpreted under Indiana law without regard to choice of law principles." This does not, however, mean that Indiana law necessarily governs the *enforceability* of the forum selection clause, so the court must first examine this issue. *Duggan O'Rourke Inc. v. Intelligent Office System, LLC*, No. 1:12-cv-550, 2012 WL 4057215, at *2 (S.D. Ind. 2012). Neither party briefed this issue, but it appears Berry contends Indiana law should apply while Protecto appears to argue that either federal or Colorado law should control.

The Seventh Circuit has left open the question as to which law governs the validity and interpretation of a forum selection clause in diversity suits when such a clause is invoked in an attempt to obtain personal jurisdiction that would otherwise be unobtainable.[2] *See Abbott Labs. v. Takeda Pharm. Co.,* 476 F.3d 421, 423 (7th Cir. 2007); *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union,* 437 F.3d 606, 609 (7th Cir. 2006). In each of these cases the Court evaluated the enforceability of the

---

[2] Berry does not argue that personal jurisdiction would exist without the forum selection clause.

clause under both federal and state law and reached the same result, so it was unnecessary to decide that issue. *Abbott Labs*, 476 F.3d at 423-24; *IFC Credit*, 437 F.3d at 608-13. These cases did not, however, discuss the issue presented here – whether the forum state or another state's law should apply. *Abbott Labs* suggested in dicta that courts should "determin[e] the validity and meaning of a forum selection clause . . . by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears, rather than making the court apply two different bodies of law in the same case." 476 F.3d at 423. This is not helpful here, though, because the forum selection clause also includes a choice of law clause. Indeed, if the court were to decide now that Indiana law applied based on the forum selection clause, then it would already validate such a clause before analyzing it.

Though this remains an open question in the Seventh Circuit, the court agrees with the analysis in *Zimmer*, which determined that the forum state's law applied to the enforceability of the forum selection clause regardless of which law applied to the remainder of the case. 2009 WL 1424199, at *4. This application is consistent with rules in a diversity action that require a federal court to (1) resolve personal jurisdiction under the forum state's laws, and (2) apply the forum state's choice of law rules. *Id.* (citing *IFC Credit*, 437 F.3d at 608); *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001). Moreover, "Indiana choice of law doctrine favors contractual stipulations as to governing law." *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind.

2002). Because there is no reason to disregard that presumption, Indiana law governs the enforceability of the forum selection clause.[3] *See Zimmer*, 2009 WL 1424199, at *5.

## 2. Enforceability of Forum Selection Clause

In Indiana, forum selection clauses are generally enforceable. *Adsit Co., Inc. v. Gustin*, 874 N.E.2d 1018, 1022 (Ind. Ct. App. 2007). Indeed, Indiana state courts have "repeatedly held that parties may consent by contract to the exercise of personal jurisdiction by courts that otherwise might not have such jurisdiction." *Everdry Mktg. & Mgmt., Inc. v. Carter*, 885 N.E.2d 6, 10 (Ind. Ct. App. 2008). Forum selection clauses – even those occurring in form contracts – are enforceable if: (1) "they are reasonable and just under the circumstances"; (2) "there is no evidence of fraud or overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court"; and (3) they were freely negotiated. *Grott v. Jim Barna Log Sys.-Midwest, Inc.*, 794 N.E.2d 1098, 1102 (Ind. Ct. App. 2003) (citing *Mechanics Laundry v. Wilder Oil Co.,* 596 N.E.2d 248, 252 (Ind. Ct. App. 1992)); *Horner v. Tilton*, 650 N.E.2d 759, 763 (Ind. Ct. App. 1995). The party claiming unfairness bears a heavy burden of proof even where the forum selection clause establishes a remote forum for resolution of conflicts. *Grott*, 794

---

[3] Though Indiana law will govern this analysis, the court notes, much like *IFC Credit* and *Abbott Labs*, that the same result would have been reached if federal or Colorado law had governed. Under Colorado law, a forum selection clause is enforceable unless the clause is unfair or unreasonable. *QFA Royalties, LLC v. Case*, No. 05-cv-00685, 2006 WL 894882, at *2 (D.Colo. 2006). Similarly, federal courts find a "forum selection clause is enforceable to the extent as the usual terms of a contract, which mainly means unless it was procured by fraud or related misconduct." *IFC Credit*, 437 F.3d at 610. Accordingly, the choice of law issue for determining the enforceability of the forum selection clause has no practical effect.

N.E.2d at 1102 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991) (citation omitted)).  The court will now examine these factors.

### a.  Freely Negotiated

In determining whether a forum selection clause was freely negotiated, the court applies a fact-sensitive test.  *Id*.  To that end, the court "examine[s] the relative sophistication of the parties and the circumstances surrounding the agreement."  *Horner*, 650 N.E.2d at 763.  A standardized contract is not unenforceable merely because of the unequal bargaining power of the parties.  *Grott*, 794 N.E.2d at 1102 (citing *Rumple v. Bloomington Hosp.,* 422 N.E.2d 1309, 1313 (Ind. Ct. App. 1981)).  Instead, a party must also establish that the contract is unconscionable by showing it "contains unreasonable or unknown terms and is the product of inequality of bargaining power."  *Id*.  The court must keep in mind, though, the presumption that contracts represent the freely bargained agreement of the parties.  *Id*.

Here, a great disparity in bargaining power does not exist.  Berry is a global manufacturer of injection-molded plastic packaging and other products.  *See* http://www.berryplastics.com/catalog/content/corporate/history (last visited February 2013).  Though not as large as Berry, Protecto also has sales representatives throughout the United States, Canada, and Caribbean.  *See* http://www.protectowrap.com/sales-representatives/ (last visited February 2013).  These are sophisticated parties that have extensive experience in entering these types of agreements.  As a result, the court concludes no significant disparity in the sophistication or bargaining power of the parties exists and thus, the contract was freely negotiated.

Protecto, nevertheless, maintains that the clause was not freely negotiated because Berry failed to provide Protecto a paper copy of the Standard Terms and Conditions containing the clause when Protecto executed the Credit Agreement. In support of that proposition, Protecto's Chief Executive Officer, Jack Hopkins, testified that he neither located the Standard Terms and Conditions in Protecto's files nor does he recall executing a Credit Application with the Standard Terms and Conditions attached. (Hopkins Aff. ¶ 12).

The Credit Application, executed by Protecto, specifically provides that Protecto "received and reviewed [Berry's] standard terms and conditions for sale of goods by paper or electronic copy or on [Berry's] website at www.berrryplastics.com." It also provides that Protecto "agrees[s] that all sales of goods will be subject to these standard terms and conditions." Even more, Protecto received at least five (5) credit memos and invoices that referenced sales being subject to these Standard Terms and Conditions.

The Standard Terms and Conditions were, under Indiana contract law, incorporated by reference and became a part of the binding agreement between the parties. *See I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1036 (Ind. Ct. App. 1998) (stating "[w]here a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties"). The Credit Application, therefore, does not contain "unknown terms." The "terms" were known and accessible on Berry's website. The fact that Protecto did not read those terms is irrelevant to the present inquiry. Indeed, "parties are obligated to know the terms of the agreement they

are signing, and cannot avoid their obligations under the agreement due to a failure to read it." *Park 100 Investors, Inc. v. Kartes*, 650 N.E.2d 347, 349 (Ind. Ct. App. 1995). Thus, Protecto's claim that it had no knowledge of the forum selection clause does not preclude its enforceability. Accordingly, the forum selection clause is freely negotiated.

### b. Unjust and Unreasonable

In order to set aside an agreed upon forum selection clause, Protecto must "clearly show that enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching." *Grott*, 794 N.E.2d at 1104. Though Protecto does not allege fraud or overreaching, it does argue that it is unreasonable to enforce this forum selection clause. Protecto's burden under these circumstances is to show that "trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *Horner*, 650 N.E.2d at 763-64.

Rather than address the applicable standard, Protecto argues that it would be unreasonable to enforce the forum selection clause because the Credit Application held it subject to Terms and Conditions "as they now exist and as they may be amended hereafter." According to Protecto, it could not have waived its rights to challenge personal jurisdiction based upon a provision on a website that "may be and has been amended in the future."

There is no evidence in the record to support Protecto's argument as to the modification or addition of the forum selection clause. By contrast, Berry has presented evidence that the forum selection clause contained in the Current Terms and Conditions is verbatim the clause contained in the Standard Terms and Conditions when (1) the

9

Credit Application was executed, and (2) the invoices and credit memos were issued. (Hale Aff. ¶ 11). Thus, Protecto's argument is inapplicable, and enforcement of the forum selection clause would not be unjust or unreasonable.

### 3. Application of Forum Selection Clause

Because there is nothing to establish that the forum selection clause was procured by fraud or overreaching, that it is unreasonable or unjust under the circumstances, or that it was not freely negotiated, it is enforceable; thus, Protecto has waived its right to argue that this court lacks venue or personal jurisdiction.[4] *See Zimmer*, 2009 WL 1424199, at *5. Accordingly, Protecto's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is **DENIED**.

### B. Motion to Transfer

Protecto argues that even if jurisdiction in this court is proper, this action should be transferred to the District of Colorado under 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Transfer is appropriate under Section 1404(a) if the moving party establishes that: (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996). Because the forum selection

---

[4] The choice of law clause is thus also enforceable, so Indiana law applies to this case.

10

clause is enforceable, Protecto has waived any challenge to whether venue is proper in this district. *See Cinram, Inc. v. Worldwide Entm't Group, LLC*, No. IP99-1296-C-T/G, 2000 WL 1124591, at *5 (S.D. Ind. Aug. 7, 2000). Moreover, Berry does not dispute that venue is proper in the District of Colorado. Accordingly, the only issue before the court is whether transferring this case to the District of Colorado will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.

The weight to be accorded each factor is not specified in Section 1404(a). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). Protecto, as the party moving for transfer, has the burden of establishing that the District of Colorado is "clearly more convenient." *State Farm*, 939 F. Supp. at 651.

### 1. Convenience of the Parties

A "party's inconvenience has no weight if a [forum selection clause] is valid because the party waived any objection based on inconvenience to it by agreeing to the clause." *IFC Credit*, 437 F.3d at 613. Federal law governs the validity of a forum selection clause for purposes of § 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988). "Federal courts are friendly to the use of forum selection clauses to determine which federal district shall host a case." *IFC Credit*, 437 F.3d at 608.

As analyzed and noted above, the forum selection clause present here -- "Purchaser consents to jurisdiction of state and federal courts in Indiana and venue of Vanderburgh County to resolve any dispute between the parties" -- is enforceable under

11

federal law, so Protecto has, therefore, waived the right to assert its own inconvenience as a reason to transfer the case.

## 2. Convenience of the Witnesses

The convenience of the witnesses is often the most significant of the three factors considered under Section 1404(a). *Somers v. Flash Tech. Corp. of Am.*, No. IP 455-C-B/S, 2000 WL 1280314, at *3 (S.D. Ind. Aug. 25, 2000). Specifically, courts look at the "residence of the witnesses, the cost of obtaining their attendance, the nature of their potential testimony, and the availability of compulsory process for nonparty witnesses." *Utley v. N. Am. Van Lines, Inc.*, No. IP 02-0249-C-T/K, 2002 WL 31431482, at *2 (S.D. Ind. Oct. 3, 2002). "This analysis is not merely a numbers game: what is significant is the substance and materiality of potential witnesses' testimony." *Somers*, 2000 WL 1280314, at *3 (citation omitted).

Protecto argues the convenience of the witnesses weighs in favor of transfer because the Berry representative who negotiated the contract -- Carl Weller ("Weller") – resides in Colorado. (Hopkins Aff. ¶ 14). Protecto maintains that only the District of Colorado may compel his testimony; however, nothing indicates that Weller will be unavailable or refuses to either testify at trial or be deposed.[5] Moreover, Weller is the only witness either side has identified as a resident of Colorado. Berry's representatives and other potential witnesses are located in Georgia, Indiana, Louisiana, and Massachusetts. (*See* Deposition of Ronda Hale 23:11-22 & 36:21-25; Affidavit of

---

[5] The court also notes that Weller is an employee of Berry, not Protecto. Though the convenience of all witnesses is considered, the court puts less stock in Protecto's concern about the inconvenience of one of Berry's employees.

Thomas Eppler ¶ 5). Thus, whether the suit remains in Indiana or is transferred to Colorado, witnesses from both sides will have to travel. Simply put, "[w]hen plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). Accordingly, the court finds that Protecto has not met its burden to show that transferring its case to Colorado would be more convenient to the witnesses.

### 3. Interest of Justice

The final factor the court considers is the interest of justice, which "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Law Bulletin Pub., Co. v. LRP Publications, Inc.,* 992 F. Supp. 1014, 1019 (N.D. Ill. 1998) (citation omitted). This factor focuses on the following public considerations: (1) the transferee forum's familiarity with the governing law, (2) the congestion in the alternative courts, and (3) the local interest in deciding local controversies at home. *Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.,* 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008).

#### a. Transferee Forum's Familiarity with Governing Law

Protecto argues that Colorado law governs the dispute, so the District of Colorado is better suited to handle the case because it is more familiar with Colorado law. The court has already determined that the forum selection clause is enforceable and thus Indiana law applies. Accordingly, this factor goes against transfer as this court should, in

theory, be more familiar with Indiana law. Because Indiana law applies here, the interest of justice is served by keeping the case in this forum. *See id.* at 947 (stating "the 'interest of justice' is best served when court efficiency is served, specifically when a court most familiar with the law to be applied is able to oversee the case").

### b. Congestion in the Alternative Courts

Based on statistical evidence, Protecto argues that it will receive a trial and disposition sooner in the District of Colorado than it will receive in this court. (Def.'s Mem. Law 15-16). These statistics are not sufficient to merit transfer. To be sure, the median time from filing to disposition and from filing to trial were slightly faster in the District of Colorado (3.6 months and 3.8 months, respectively), but this time period alone is not sufficient to warrant transfer. Also, Colorado has significantly more filings than the Southern District of Indiana, and the court will not add to Colorado's caseload. Accordingly, this factor does not favor either party.

### c. Local Interest in Deciding Controversy

Finally, local interests in this case do not favor either party. Colorado has an interest in protecting its citizens and maintaining its public policies while Indiana has similar interests in overseeing the conduct of Indiana corporations. Thus, because this and other public considerations do not favor transfer, Protecto has failed to demonstrate the interest of justice demands transfer to the District of Colorado.

As the convenience of the parties and witnesses and the interest of justice do not weigh in favor of transfer, Protecto has not met its burden to show that the District of Colorado is a clearly more convenient forum.

### III. Conclusion

For the reasons set forth above, Protecto's motion to dismiss for lack of personal jurisdiction (Docket #10) is **DENIED**. Further, Protecto's alternative motion to transfer is also **DENIED**.

**SO ORDERED** this 28th day of February 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.